IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK07-40128 |
| | ) | |
| MURRAY A. REHRS and | ) | CH. 13 |
| DONNA J. REHRS, | ) | |
| | ) | |
| Debtors. | ) | |

## **ORDER**

      This matter was presented to the Court on the Amended Motion to Reconsider (Fil. #36) filed by Debtors, and a Resistance by Wells Fargo Financial Bank ("Bank") (Fil. #38). Debtors are asking for reconsideration of this Court's Order of May 16, 2007 (Fil. #32), which denied Debtors' motion to avoid the lien of Bank, and which also denied confirmation of Debtors' plan. For the reasons set forth below, Debtors' Motion to Reconsider is denied.

      The underlying facts are not in dispute. Debtors purchased their residence located at 204 South 3rd Street, Hampton, Nebraska, pursuant to the terms of a real estate installment sales contract dated May 8, 1981. The original purchase price was $15,000.00. In 1987 or 1988, Debtors paid off the land contract by obtaining financing from an entity they refer to as "Farmers State Bank/Pinnacle Bank." In 1993 or 1994, Debtors refinanced their loan with that entity, at which time Debtors estimate that they owed approximately $6,000.00 from the original purchase price of the residence. In 2003, Debtors refinanced again, this time with Wells Fargo Financial Nebraska, Inc. ("WFFNI"). That loan, made on August 27, 2003, was in the amount of $68,655.17, and was secured by a deed of trust filed on September 10, 2003, against Debtors' residence. There is no indication in the record as to how much, if any, of the original $15,000.00 purchase price remained at the time of the WFFNI refinancing. Clearly, at some point during the refinancing process, Debtors borrowed additional money above their original purchase price of $15,000.00.

      Earlier in 2003, Debtors obtained a secured credit card from Bank. Debtors granted a deed of trust against their residence to secure the credit card loan. That deed of trust is dated February 6, 2003, and was filed for record on February 10, 2003. According to the proofs of claim filed by the parties, WFFNI was owed $59,466.20 at the time of the bankruptcy filing, and Bank was owed $16,848.44 at that time.

      Thus, according to the public records, at the time of bankruptcy filing there were two deed of trust liens against Debtors' residence. A first lien in favor of Bank in the amount of $16,848.44, and a second lien in favor of WFFNI in the amount of $59,466.20.

      Debtors are asserting that despite the recording dates, the lien of WFFNI should be considered a purchase money security interest which is actually prior to the lien of Bank, and since the value of the property is less than the amount owed to WFFNI, the lien of Bank is wholly

unsecured (as opposed to under-secured). Therefore, Debtors desire to "strip off" Bank's lien pursuant to the process of valuing the secured claim under 11 U.S.C. § 506(a).

The United States Supreme Court case of *Nobelman v. American Sav. Bank*, 508 U.S. 324, 113 S. Ct. 2106, 124 L. Ed. 2d. 228 (1993), held that under 11 U.S.C. § 1322(b)(2), a debtor could not strip down a creditor's claim when any portion of that claim is secured by the debtor's home. To do so would alter the creditor's rights, which is expressly prohibited by 11 U.S.C. § 1322(b)(2).

Subsequent to *Nobelman*, many courts were faced with requests to strip off liens that were wholly unsecured, as opposed to under-secured. In other words, where there is no value in the property above the value of prior liens and encumbrances against the property, courts were asked to strip off wholly unsecured liens notwithstanding *Nobelman* and 11 U.S.C. § 1322(b)(2). In fact, in the case of *In re Sanders*, 202 B.R. 986 (Bankr. D. Neb. 1996), Chief Judge Timothy J. Mahoney engaged in an extensive analysis of the availability of lien stripping where a junior lien was totally unsecured as to the debtor's principal residence. Specifically, Chief Judge Mahoney concluded that "[a] creditor that holds a security interest in the debtor's principal residence is not protected by the anti-modification provision of § 1322(b)(2) if the creditor does not hold a 'secured claim' or a secured claim component pursuant to § 506(a)." *Id.* at 991. Thus, where the claim is wholly unsecured, the lien may be avoided. *Id.*

Debtors' residence is valued at $49,670.00. This valuation does not appear to be in dispute. Therefore, if WFFNI is actually in a first lien position, and that entity is owed approximately $59,000.00, there is no value in the property above and beyond the lien of WFFNI. That would leave Bank as wholly unsecured if its lien is actually in a second lien position. Thus, in order to avoid the lien of Bank, it is incumbent upon Debtors to show that Bank's lien is actually in a second lien position as opposed to the first lien position indicated by the public record.

Debtors take the position that the WFFNI lien is a refinance of an earlier purchase money security interest and, therefore, it retained its priority as a purchase money security interest. *Omaha Loan & Bldg. Ass'n v. Turk*, 146 Neb. 859, 864, 21 N.W.2d 865 (1946) (stating that a purchase-money mortgage takes precedence over prior liens); *Commerce Sav. Lincoln, Nebraska, Inc. v. Robinson*, 213 Neb. 596, 600, 331 N.W.2d 495, 498 (1983) (a release and a new mortgage will continue the original mortgage). Thus, Debtors appear to be asserting that the entire $59,000.00 lien of WFFNI has purchase money security interest priority. Debtors are mistaken on this point. As indicated previously, the original purchase price of the property was $15,000.00 and the amount financed was $13,000.00. Thus, the indebtedness entitled to "purchase money" status can never exceed the original purchase money security interest of $13,000.00. "A purchase-money mortgage is given for the unpaid purchase money on a sale of land as part of the same transaction as the deed, and its funds are actually used to buy the land." *Id.*

Therefore, at best, the lien of WFFNI is only entitled to purchase money status of, at most, $13,000.00. In reality, the purchase money portion is substantially less (and possibly nonexistent) considering that the $13,000.00 loan was made in 1981, and has been paid down dramatically since

that time. Even Debtors' affidavit indicates that the lien was paid down to $6,000.00 in the mid-1990s. There is no valid basis for stating that any other portion of the $59,000.00 refinanced indebtedness against Debtors' property could have purchase money priority. Those excess funds simply were not "purchase money."

Since Debtors cannot claim purchase money status for any funds that do not actually represent purchase money, their argument that Bank's lien can be avoided as wholly unsecured must fail. Even if the entire original purchase money amount of $13,000.00 was still unpaid, the property value of more than $49,000.00 far exceeds that amount. Therefore, there is some equity to support both Bank's lien and WFFNI's lien. Pursuant to *Nobelman*, Bank's lien cannot be avoided on that basis.

Another position Debtors might have argued is equitable subrogation. Where one having an interest in property pays off an encumbrance on the property in order to protect his interest, the payor is ordinarily entitled to be subrogated to the rights and remedies of the person paid. *Hoppe v. Phoenix Homes, Inc.*, 211 Neb. 419, 423-24, 318 N.W.2d 878, 881-82 (1982). However, it is important to note that the granting of such relief is not automatic. Instead, it depends upon the particular facts and circumstances and is equitable relief. *Id.* (citing *Jones v. Rhodes*, 162 Neb. 169, 171-72, 75 N.W.2d 616, 618 (1956)). Here, there is no dispute between Bank and WFFNI. In other words, the two lienholders do not dispute that Bank is in first position and WFFNI is in a second position. There is simply no equitable reason to elevate WFFNI over Bank, particularly since WFFNI is not even asking for such relief. Debtors are the only ones asking for that relief, and they are doing so solely to allow them to strip off the security interest of Bank. Certainly, equity would not support such an action. In any event, there is no evidence in the record as to the dollar amount of any liens which may have had priority over Bank which were paid with the WFFNI refinancing.

IT IS ORDERED that Debtors' Motion to Reconsider (Fil. #36) is denied.

Dated: May 31, 2007.

BY THE COURT:

/s/ Thomas L. Saladino
United States Bankruptcy Judge

Notice given by the Court to:
    *Paul D. Boross
    Matthew E. Eck
    Kathleen Laughlin
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.